```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  JOSHUA R. AGARD,                          :
                                            :   MEMORANDUM DECISION AND
                              Plaintiff,    :   ORDER
                                            :
          - against -                       :   21-cv-7181 (BMC)
                                            :
                                            :
  UNITED STATES OF AMERICA,                 :
                                            :
                              Defendant.    :
                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This case arises out of a motor vehicle accident involving a United States Postal Service truck. The Government has moved to dismiss under Fed. R. Civ. P. Rule 12(b)(1) on the ground that plaintiff failed to make a proper administrative presentment of his claim. I disagree and the motion is therefore denied.

## BACKGROUND

The accident occurred on May 27, 2020. On July 29, 2020, plaintiff's counsel served the required SF-95 claim form. The SF-95 asks that plaintiff state "the nature and extent of each injury or cause of death, which forms the basis of the claim." Plaintiff wrote in "multiple injuries, extent unknown." For the requested "amount of claim," plaintiff wrote in "$10,000,000." Plaintiff further filled out the form to indicate the time and place of the accident; his license plate number; the name and license plate number of the USPS driver; and that there had been a collision between them.

On August 4, 2020, the Government claims investigator telephoned plaintiff's attorney and requested proof of plaintiff's attorney's representation and plaintiff's medical records. In

response to that telephone call, in a letter dated that same day, plaintiff's counsel submitted additional documentation, consisting of a power of attorney in favor of plaintiff's counsel; three MRI reports, one on each region of plaintiff's spine; and an x-ray report of plaintiff's lumbar spine. The radiology reports did not note any muscle tears or fractures.

In a letter dated September 18, 2020, a claims examiner advised plaintiff that his claim had been received, and that he could submit any additional information that he thought would be helpful. The letter did not request or require any additional information, and plaintiff did not respond to this letter.

By a subsequent letter dated March 17, 2021, the claims examiner requested additional documents:

> As you know, on or about August 3, 2020, your office presented the above-referenced administrative claim for adjudication; however, no documentation was provided in support thereof. Accordingly, on September 18, 2020, the Postal Service sent a communication asking that you provide the requisite documentation. To date, no such documentation has been provided.
>
> In order to allow the Postal Service to properly evaluate your client's claim, please provide me with your client's medical records, itemized bills and outstanding lien information for treatment received in connection with the above-referenced incident.

Plaintiff, through his attorney, replied on March 30, 2021, enclosing two of the previously submitted MRI reports; an additional MRI report of his left shoulder; and four HIPAA authorizations addressed to his health care providers and an involved insurance carrier.

On April 21, 2021, the claims examiner wrote to plaintiff again:

> I am in receipt of your letter dated March 30, 2021 and the enclosed HIPAA authorizations as well as several MRI reports.
>
> Please be advised that a claimant asserting a tort claim under the Federal Tort Claims Act must submit competent evidence to support his injuries and damages. Accordingly, in order to support your client's claim and to allow the Postal Service to properly evaluate your client's claim, please provide me with your

2

> client's medical records, and itemized bills for treatment received in connection with the above-referenced incident.

Plaintiff did not respond. Instead, he commenced this action on December 30, 2021. On February 4, 2022, the Government denied the claim administratively based on plaintiff's "failure to submit competent evidence of your client's injuries and damages as is required and despite multiple requests … ."

Before the Court is the Government's motion to dismiss for lack of subject matter jurisdiction.

## DISCUSSION

The federal government, as sovereign, enjoys immunity from suit. Hans v. Louisiana, 134 U.S. 1, 13 (1890). For that reason, the only suits that may be brought against it are those for which the Government has expressly waived its sovereign immunity.[1] Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019). The Federal Tort Claims Act is one such statute that contains a limited waiver of sovereign immunity. 28 U.S.C. § 1346(b)(1). That waiver is conditioned on the claimant having "presented" his claim administratively, effectively imposing administrative exhaustion as a pre-condition to suit:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

---

[1] Under the Postal Reorganization Act, 39 U.S.C. § 101 et seq., the Postal Service is "an independent establishment of the executive branch of the Government of the United States." § 201. Accordingly, the Postal Service enjoys federal sovereign immunity absent a waiver. See Postal Service v. Flamingo Industries (USA) Ltd., 540 U.S. 736, 741 (2004). Although the Postal Reorganization Act generally "waives the immunity of the Postal Service from suit by giving it the power 'to sue and be sued in its official name,'" id. (quoting 39 U.S.C. § 401(1)), the statute also provides that the FTCA "shall apply to tort claims arising out of activities of the Postal Service," § 409(c).

3

28 U.S.C. § 2675(a). To properly "present" his claim, a claimant must provide the Government with (1) a written notice of claim that sufficiently describes the injury so that the agency can investigate and ascertain the strength of a claim and (2) a sum certain damages claim. Romulus v. United States ("Romulus I"), 983 F. Supp. 336, 340 (E.D.N.Y. 1997), aff'd, Romulus v. United States ("Romulus II"), 160 F.3d 131 (2d Cir. 1998).

In the instant case, the Government contends that plaintiff's administrative claim was deficient in several respects. First, plaintiff's description of his injury as "multiple injuries, extent unknown," is too vague and conclusory to constitute adequate presentment. Second, plaintiff "ignored three written requests, as well as a telephone call," asking that he provide medical evidence to support his injuries. Relatedly, the Government asserts that the MRI and x-ray reports did not help it evaluate plaintiff's claim, as they showed no fractures or tears.

The Second Circuit most recently discussed the presentment requirement in Collins v. United States, 996 F.3d 102, 109 (2d Cir. 2021).[2] That was also a claim arising from a plaintiff's traffic accident with a Postal Service truck. The plaintiff filed a Form SF-95, giving a description of how, when, and where the accident occurred, a detailed description of his injuries, and a demand for $10 million in damages. The form also appended itemized medical bills totaling about $42,000 from the hospital where plaintiff was first treated for his injury, including bills for "critical care," "hospital care," "inpatient initial consult[s]," and "anesthesia services." The cover letter that the plaintiff's counsel submitted with the form and its attachments also

---

[2] The Second Circuit referred to the presentment requirement as "jurisdictional," Collins, 996 F.3d at 102, which is the characterization that courts have historically applied to it. See Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005). However, in Copen v. United States, 3 F.4th 875 (6th Cir. 2021), the Sixth Circuit, in a ruling of first impression, held that, in light of Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), and its progeny, the "sum certain" requirement is not jurisdictional, and strongly suggested that § 2675 itself, although mandating statutory exhaustion, is also not a jurisdictional requirement.

4

disclosed that the plaintiff was then in the intensive care unit of the hospital, and that the plaintiff would supply more records as they became available.

In response to subsequent inquiries from the claims examiner, the plaintiff submitted a HIPAA release, 300 pages in medical records, the ambulance report, additional billing records, and an updated description of his injuries. When the plaintiff heard nothing further, he sued. After the commencement of the suit, the Government rejected his claim as inadequately presented because the plaintiff had "refused to provide records" showing treatment beyond his initial hospitalization. The district court found the presentation inadequate on that basis and granted the Government's motion to dismiss for lack of subject matter jurisdiction.

The Second Circuit reversed, finding that the claim had been adequately presented. In making this determination, the Court did not rely on the totality of submissions that the plaintiff had made in response to the claim examiner's various requests. Rather, it held that the plaintiff's initial submission – the SF-95, hospital bills, and cover letter – was itself enough to satisfy the presentment requirement:

> Collins's Form 95 provides quite specific information about the nature of the injuries he sustained from the collision. It identifies seven bone fractures by location: one in Collins's left knee, three to his front ribs, and three to his back ribs. The Form 95 also reports a possible fracture to Collins's left elbow, chest and blood infections, and equilibrium issues. . . . Moreover, along with his Form 95, Collins submitted documents from Huntington Hospital that, at a minimum, confirmed that his injuries required hospitalization, that the hospitalization lasted from October 25 to October 30, 2017, and that treatment had required, *inter alia*, anesthesia services – strongly suggesting that surgery was performed. Finally, in filing the Form 95, counsel advised USPS that Collins was again hospitalized, indeed, in the intensive care unit, alerting USPS that Collins was by no means recovered from his injuries. This information was sufficient to allow USPS to investigate and value the claim, thereby satisfying the jurisdictional presentment requirement of 28 U.S.C. § 2675.

996 F.3d at 112.

5

In reaching this conclusion, the Second Circuit distinguished the facts from those in its decision in Romulus II and the district court's decision in Romulus I. Romulus I had found the presentment inadequate because, among other things, the only disclosure in the plaintiff's submission as to the extent of his injuries was "unspecified injuries to a claimant's 'head, body and extremities' … ." Id. at 111, quoting Romulus I, 983 F. Supp. at 337. That kind of "conclusory" claim was not "specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims." Romulus II, 160 F.3d at 132 (citing Johnson ex rel. Johnson v. United States, 788 F.2d 845, 848-49 (2d Cir. 1986), overruled on other grounds, Sheridan v. United States, 487 U.S. 392 (1988)). To accomplish those purposes, "a claimant 'must provide enough information to permit the agency to conduct an investigation and estimate the claim's worth.'" Collins, 996 F.3d at 111 (quoting, Johnson, 788 F.2d at 848-49); see also Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983).

Plaintiff's initial claim filing in the instant case is a far cry from the claim found sufficient in Collins and is much more like the claim found inadequate in Romulus. Although plaintiff's claim here, as in Collins, had a $10 million demand; included the time, place, and identification of the USPS truck driver; and provided a brief description of the accident, that is where any similarity ends. Most importantly, plaintiff's claim gave no information about the nature or extent of plaintiff's injuries. There is no comparison between plaintiff's vague statement of "multiple injuries, extent unknown" and the description in Collins of "a fractured left knee, 6 rib fractures (3 front, 3 back); left elbow, exposed bone and/or fracture; head; chest, including chest infection; equilibrium issues; blood infection." Collins, 995 F.3d at 106. Nor did plaintiff here submit any medical bills that would show either the dollar amount or the nature of his treatment, either of which could have shed some light on his injury. Finally, there was no

advice given by plaintiff's attorney, in contrast to Collins, as to whether or for how long plaintiff had been hospitalized, let alone if he had been in intensive care, as was the plaintiff in Collins.

Thus, plaintiff's initial submission did very little to assist the Government in assessing its potential liability and nothing at all to help the Government value the claim. Indeed, as to the former, although the SF-95 asked for the identification of witnesses, plaintiff answered "claimant is unaware of any witnesses at this time" – even though plaintiff had a passenger in his car who must have been a witness. The Government had no opportunity to call the witness and get his statement as to what happened. And, as to the value of the claim, plaintiff's initial submission was even less descriptive than the cursory reference to "head, body, and extremities, pain suffering and emotional distress" in Romulus. There is no way that the Government could have initiated any sensible settlement discussion based on such limited information – instead of inserting "multiple injuries, extent unknown," plaintiff might as well have left the space blank, for the phrase gave the Government nothing to go on.

Having concluded that plaintiff's initial submission was inadequate, the question becomes whether his subsequent submissions in response to the claim examiner's questions – four radiology reports and four HIPAA authorizations – cured the initial deficiency. The question is close, but I conclude that they did.

I am not impressed by plaintiff's tendering of the four HIPAA authorizations. Plaintiff apparently thought the Government was under an obligation to contact his health care providers and obtain the records itself. That is a common practice in personal injury lawsuits for two reasons: (1) insurance companies will not simply accept whatever records a plaintiff's attorney gives them out of concern that the records might not be complete; and (2) third-party records obtained in that fashion might have admissibility problems at trial. However, asking the

7

Government to assume that obligation in the context of attempting to settle or value a claim in the administrative FTCA claims process is simply too much. Plaintiff is the one who wanted to get paid. He had to give the Government something that would enable it to make or decline to make an offer, not ask it to undertake its own records sweep from plaintiff's various health care providers.

The MRI and x-ray reports, however, were just enough to tell the claims adjuster the nature of plaintiff's injury. The Government notes that the MRIs and x-ray did not show any fractures or muscle tears, but that is only part of the story. First, to the extent the radiology reports were negative, that itself is useful to the Government in negotiating a settlement – they suggest a soft tissue injury that doesn't have a lot of settlement value, and the Government's analysis could have so concluded. Second, the MRI of plaintiff's cervical spine showed "Cervical spasm"; "Focal acute central herniations of the nucleus pulposus at both the C3/4 and C4/5 levels, with encroachment of the anterior subarachnoid space and impingement of the nerve roots centrally"; and "mild bulging of the annulus fibrosis of the C5/ and C6/7 discs." The MRI of plaintiff's lumbar spine showed "mild bulging of the annulus fibrosis of the L4/5 and L5/S1 discs."

It is, of course, entirely possible that these anomalies are congenital or the result of non-traumatic disc degeneration, or from some prior trauma, rather than the result of the automobile collision. But the fact that plaintiff may have a claim of little merit does not bear on the issue of whether that claim was properly presented. The reports that plaintiff submitted were enough to let the Government know that he was claiming a neck and back injury. If the Government wanted to try to settle the case on that basis, even for a nominal amount, or to refuse to settle, it had the ability to do so.

Courts must be careful not to inflate the presentment requirement into one that requires a claimant to prove his case at the administrative level. The Government succumbs to this error when it asserts that "the MRI and x-ray reports did not establish that any of the conditions observed . . . were the result of the collision at issue." An FTCA administrative claim does not have to "establish" anything; it simply must notify the Government of what plaintiff is claiming. Besides, how would plaintiff have even shown that at the administrative stage? He certainly didn't have to present a medical or accident reconstructionist opinion as part of his claim.

True, the totality of information that plaintiff submitted was short of that in Collins, and hardly reflective of best practices. But it was enough to let the Government know his theory that he had sustained a neck and back injury due to the USPS employee's negligence.

## CONCLUSION

The Government's motion to dismiss is denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       April 28, 2022